Court of Appeals. MR. ABERBUCK. Good morning, Your Honors. May it please the Court, this case is controlled by the Court's precedential decision in Southern Nuclear, in which it is specific. MR. BOUTROUS. Why not Yuson Bonk case in Nebraska Power? MR. ABERBUCK. Because, Your Honor, Southern Nuclear reflects an interpretation, a binding interpretation, of the Court's decision in Nebraska Public Power. And in fact, the Court in Southern Nuclear specifically held that its analysis was consistent with the Yuson Bonk decision in Nebraska Public Power. On page 1306 of the decision in Southern Nuclear, it specifically addressed NPPD, and it said MR. BOUTROUS. But Nebraska Power said very clearly that the breach could not be excused by unavoidable delay. Those are quotes from the Yuson Bonk opinion. Doesn't that end this matter? MR. ABERBUCK. It doesn't, Your Honor. We're not seeking to excuse the delay as a consequence of—we're not seeking to excuse the delay by virtue of the unavoidable delays clause. We are, however, seeking to exercise the party's bargain for right to argue that damages are not recoverable in the event of an unavoidable delay. MR. BOUTROUS. But you're saying there's no damages because the breach was excused. Isn't that a total contradiction in terms? Either you have a breach or you don't have a breach. MR. ABERBUCK. I don't think so. And first, I want to make clear that this is an issue that's already been decided by Southern Nuclear and by the bonding decision in Southern Nuclear, but I'm happy to address the merits of that. MR. BOUTROUS. Well, I, for one, don't think it's decided by Southern Nuclear in any respect. MR. ABERBUCK. Well, let me address that. MR. BOUTROUS. I think Southern Nuclear opined that if there had been an unavoidable delay, it would have been waived, but Nebraska Power had clearly stated in advance that there couldn't be one. MR. ABERBUCK. Well, there are two statements in the Southern Nuclear decision, Your Honor, that specifically state unqualifiably, and this is on pages, well, I don't have the page in front of me, I'll find it, where we say, where the court said in Southern Nuclear specifically, nothing that we said in Nebraska Public Power, and this is the language they used, foreclosed an argument before the federal claims based upon the unavoidable delays clause. And that was why the court constructed that syllogism with the two because clauses that we've highlighted in our brief. And one of the important because clauses was because the failure to raise the defense was not compelled by the D.C. Circuit's mandamus order. That was the holding of Southern Nuclear, and it's important to recognize that the court was fully aware of the scope of the NPPD opinion when it issued its decision in Southern Nuclear, and it specifically stated, in our en banc decision in Nebraska Public Power, this is the case. Assuming that Southern Nuclear did try to explain Nebraska Power, can it do so, since it was a panel, and the en banc decision of this court had said, had given res judicata to the District of Columbia Circuit, who'd said there was no unavoidable delay, and itself had said there was no unavoidable delay. There are a number of issues within that. But the point being, why don't we stick with the simple one, did Southern Nuclear have anything to explain, given that it was a panel, and there was an en banc decision that was binding on the question we're addressing? Absolutely, Your Honor. The law develops through incremental steps, and just like the case we cite regarding Tohono and the method of analysis we cite there, that's how this court routinely issues decisions. Yes, but is there any room for development after Nebraska Power? Absolutely, Your Honor. Nebraska Public Power made clear that it was not directing the implementation of any remedy, it was not interpreting the contract, because it recognized that giving res judicata effect to anything that the D.C. Circuit had done that implicated issues of contract interpretation would have been beyond the scope of the D.C. Circuit's jurisdiction, and beyond the scope of the United States' waiver of sovereign immunity. And what it specifically said was, and counsel is correct, that caveat that it carved out when it said we're not interpreting the standard contract or anything like that, except to the extent compelled by the statutory directives set forth in Section 302A5. But the statutory directive says nothing about what the parties can agree to vis-à-vis the effect on damages of a force majeure clause, and that's exactly what they did here. And it was fully appropriate for the Southern Nuclear panel, for the court in Southern Nuclear, to have issued a decision saying that nothing that was said in NPPD was inconsistent with the incorporation of a defense based on the unavoidable delays clause before the court of federal claims. Aren't you asking us to rule contrary to our en banc decision in Nebraska? Isn't that ultimately what you want us to do? No, Your Honor. I think that Southern has already said, and I think this is important, Southern has said that this interpretation is not inconsistent with the en banc decision in NPPD. And we postulate a scenario perhaps in our brief where there are two conflicting lines of authority, perhaps one is decades, 20, 30, 40 years old, something like that, and the trial court is unaware of the existence of a conflicting line of authority. And then in that circumstance, it might be appropriate for a trial court subsequently to say, wait a second, this opinion ignores what happened 50 or 60 years ago, and we have to go back with what happened 50 or 60 years ago. But this is a situation quite unlike that. This is a situation where the court was fully aware of the decision it had made only a few years earlier in NPPD, and it specifically said, we are not trampling on anything that was decided in NPPD. We are aware of what happened, we know what the scope of the decision is, we are interpreting it, we are developing the law. That's what, as I mentioned before, routinely happens with respect to interpretations prior to previous decisions. And I would pause to note the implications of condoning what the trial court did. Can we interpret it as exactly what I said, if there was an unavoidable delay, it was waived. So there's no application of it in this case. We interpret Nebraska Power as upholding the D.C. Circuit's res judicata authority, that there is no such defense. I don't think, I don't understand how it would be possible, your honor, to afford that interpretation to the decision in light of the two different statements where it unequivocally stated that nothing... What they said is not binding on us. What's binding on us is the holding. The holding was, in that case, there's no unavoidable delays defense. We agree, because Nebraska Power compels that result. When you say Nebraska Power, do you mean the... I mean the language in Nebraska Power that says, could not be excused by unavoidable delay. There is no such defense. Well, your honor, the holding of the case is set forth in the because clauses, and specifically in the because clauses that says, in the second because clause, which says, because the United States' failure to raise the defense was not compelled by the D.C. Circuit's mandamus order in Northern states. That was essential to the court's judgment, although entities suggest otherwise. The trial court, in fact, specifically rejected that argument, because that was essential to the court's judgment, and therefore part of the holding. I would like to turn to, at least with the remainder of my time for now, to the court's decision in... Do you believe that this court in Nebraska, in the en banc decision, ratified the D.C. Circuit's writ of mandamus only with respect to statutory interpretation, or did it also extend to application to the contractual issue? The latter. Only with respect to... I lost track of how the court framed its question, but the court in Nebraska Power very clearly drew a line between the D.C. Circuit's jurisdiction to interpret statutory matters, and this court's jurisdiction to interpret contractual matters. I'm having a hard time assuming that that's the case, and then how does that have a practical effect? The DOE cannot assert it as an affirmative defense, the unavoidable delay, because there's no site that's been constructed yet. Well, DOE cannot assert that as a defense to liability, because that's what... But the D.C. Circuit said that it was an unconditional obligation on DOE, so it cannot escape liability by saying there's unavoidable delay. Well, Your Honor, I think it's very important to look at what the court said was actually unconditional, and I recognize that there's language dating back to the Indiana-Michigan decision, as well as in the initial Northern States Power decision from the D.C. Circuit, but the D.C. Circuit made very clear on rehearing in Northern States Power that breach of the contract was not a violation of the statute, and the citation for that is, this is in our brief, 1998 Westlaw 276581. It specifically made clear to state, we are not suggesting that the government would be in violation of statute merely for breach of the contract. But it didn't have jurisdiction to get into that issue, so it couldn't. So when we heard the case on bond, didn't we ratify that as to damages? No, Your Honor. The court's ratification of that is solely, the only res judicata effect that the court could give to something issued by the D.C. Circuit would be something that would be within the scope of the D.C. Circuit's jurisdiction. You're asking us to give effect to a portion of the Nebraska Power case that was only joined by two judges, the concurrence. You're essentially asking us to make that part of the Nebraska Power on bond. But we have very clear evidence that the vast majority of the court did not join that position. Well, first of all, this... Otherwise, it would have been in the majority, and then you would not even have to argue this. It would be the binding law. I do want to answer the question. I do see I'm into my rebuttal time. Go ahead. I don't believe so, Your Honor. I don't think that's what this court in Southern did. I note that although there were two members of the concurrence in Southern who, two members of the concurrence in NPPD who issued the opinion in Southern, there was a third... But this is the concurrence, right? Well, there's a third member who was in the majority and not on the concurrence who joined the... Even if that were the case, that it'd only be three, that wouldn't get you past the en banc court, would it? Why? I think it would, Your Honor, because now we've got three judges, the only judges who have spoken to the issue at all, who have said, when no third hearing... Well, I think you're going to hear from three more here pretty soon. Shall we hear from Mr. Silver? Good morning, Your Honor. We respectfully submit that Judge Stavage got it right when he rejected the government's motion for reconsideration. He did his best to square the en banc decision in NPPD with the panel decision, and particularly what he referred to as the implicit holding of the panel decision that the unavoidable delays clause could have been raised. But he ultimately concluded correctly in our view that Southern Nuclear contradicts NPPD, and he was obliged to follow the en banc decision. He didn't, as the government would assert, ignore binding precedent. Rather, he followed the binding precedent as a subsequent panel decision that the odds can't prevail. And even if the two cases were of equal weight, the prior case should be the deciding one. How did we get to this situation? Because the Southern panel didn't follow the NPPD majority, but rather sought to neuter that decision. But as we discuss in our brief, there's a fairly straightforward way that this court can avoid confronting what Judge Damage referred to as the unenviable position where a panel decision contradicts the earlier en banc decision. As he alternatively held, the unavoidable delays clause only applies where performance has begun, and since DOE has unfortunately not begun to perform, that clause is simply inapplicable. And that's because under the delays clause, a delay, whether it's avoidable or unavoidable, doesn't occur until performance began. That was the holding in Main Yankee, and although the primary focus of that decision was on the avoidable delays clause, DILDA A is a delay, the title of it, Article 9A, the unavoidable delays clause is delay, same title in Article 9B, the avoidable delays, and the same title for the overall clause, Article 9. And the 2000 decision in NSP2, the court explicitly held that that definition of delay applies to the unavoidable delays clause. While the government says that's a typo, they waited five years to ever raise it, they never brought it to the attention of the NSP2 panel, and simply, that is the law, and the government would as soon ignore that binding precedent as the binding precedent of NPPD. So we think that the court could easily say, there's no delay here, there's no unavoidable delay here, so we don't need to get to the question of whether Southern Nuclear was, in essence, in conflict with NPPD. But if the court does look at the two decisions, the starting point has to be the D.C. Circuit's mandamus. That order was issued in response to the 1997 preliminary determination, which DOE tried to excuse all of its delays, and the D.C. Circuit said, we're not going to let them do that because that would let them get off the hook for monetary damages. So the order barred the government from relying in any way on the unavoidable delays clause. Not for liability, not for damages, but in any way. The government would try to bifurcate the mandamus clause, and it just doesn't work. There's no basis for that in the clause itself. There's no basis for that in the decision of the D.C. Circuit. And interestingly enough, the government never sought to make that distinction between liability for unavoidable breach as a defense to liability versus unavoidable breach as a defense to damages. They never thought to raise that issue when they sought rehearing at NSP1, when they went to the Supreme Court, when they went to this court in NSP2 or Main Yankee, or in any of their briefs in NPPD. Isn't that because the D.C. Circuit's writ of mandamus was clearly limited to statutory interpretation, and they expressly said that we're not getting into the damages issue, the domain of the CFC. But what the D.C. Circuit said is our statutory interpretation will affect contract remedies. It will affect damages, and this court and banks specifically recognize that. The D.C. Circuit said that we will not allow DOE to use its interpretation of the nuclear waste policy to interfere with the statutory obligation, and that includes their interpretation as it's applied through the remedies process before this court. While this court and the Court of Federal Claims decide the remedy, as this court said in NPPD, the accept language, where the statutory interpretation is in conflict, the statutory interpretation which this court accepted as res judicata and acknowledges it's bound by, that governs. So there's no reason whatsoever that they can hide behind the statutory interpretation and say that, you know, it cuts off as soon as we switch courts. They're bound, they're bound in the D.C. Circuit, they're bound in this court, they're bound in the Court of Federal Claims. The other provision, the other argument which I think... Does the D.C. Circuit have jurisdiction to issue writs that affect money issues or damages that come before the C.F.C.? I think that issue was thoroughly discussed in NPPD. NPPD said that it is preclusive, that it does govern, and the language on page 1376, it says the order, this is the majority, did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense, except to the extent that the proposed interpretation of the contract would conflict with the statutory directive. So this court said to the extent that contract remedy, the application of contract remedy, is in conflict with the statutory directive, the statutory directive propels. And I think the important point to note that in Southern Nuclear, on page 1306, when the court said, indeed we consider the government's argument and held that the District of Columbia Circuit had jurisdiction to enter the mandamus order, and that its decision in Northern States was entitled to raise judicata effect on the issue of liability, but that it did not direct the implementation of any remedy. What did they leave out in that quote? They left out the key portion of the NBank decision, which is except to the extent that it's in conflict with the statutory directive. The other issue I want to bear in mind is that if the order really, the D.C. Circuit's order really only applied an issue of liability, or only applied as the government would have it, then why did we waste our time at NPPD? Why did all the judges think it was so important to decide the validity of the D.C. Circuit's order? If in fact they had the authority, the government had the authority to raise unavoidable delays as a defense to damages, who cares if the D.C. Circuit's order is valid or invalid? If it's valid, they can raise it. If it's invalid, they could raise it. So why did we waste our time figuring out whether sovereign immunity applies? So the logic of the government's position and the logic of Southern Nuclear just falls flat on its face. You can't have a writ that applies the way they would have it, because otherwise we've gone through a fruitless exercise. The other point I'd like to make just quickly is the distinction between damages and liability that the government and the concurring judges in NPPD would find simply doesn't make sense either. There's no basis for it in the majority opinion, although both the dissent in NPPD and the concurrence say we read the majority opinion this way, but never cite to the majority opinion. There's nothing in the majority opinion that makes that distinction. And indeed, if you look back through all the case law and all the briefs, you can never find that distinction at all. It's a distinction that just doesn't exist. It was created, as far as we can tell, during the course of the litigation, and the government never made that distinction, and we think this court should ignore it as well. We think there is an easy way to solve this problem, which is to say that unavoidable delays simply doesn't apply. However, if you need to go and look at the two cases, we think the NPPD decision made it very clear that the writ governs and the writ does not allow the government to raise unavoidable delays. Thank you, Your Honor. Counsel made an extensive reference to the statutory directive set forth in Section 30285, but there is nothing in the statutory directive that in any way prevents the assertion of an unavoidable delays clause, or in any way suggests that the parties could not have agreed to include such a clause in the contract. The government complied with the statutory directive, and there is nothing within the government's argument based on an unavoidable delays clause that would violate any such statutory directive. To the extent that there's anything unconditional, the unconditional obligation is to include an unconditional obligation within the contract, and the government has undertaken that obligation, and the parties both agreed to the existence of an unavoidable delays clause, and we find it rather interesting that at this point in time, and to quote counsel's words here, counsel's position was that any invocation of the unavoidable delays clause would be inconsistent with the Nuclear Waste Policy Act. Well, that's an interesting position now, given that any such argument should have been made pursuant to the terms of the NWPA within six months of the promulgation of the contract. Even if there were an earthquake, a tornado, or a hurricane, or something that prevented the completion of Yucca Mountain, counsel's position apparently, and Entergy's position apparently, is that that clause would be void. I would also note that Entergy apparently would like to have the benefit of the unavoidable delays clause to the extent it benefits them, because the clause works both ways, but doesn't want to have the flip side, doesn't want to have to undertake the obligation that's associated with the flip side of the unavoidable delays clause. Very briefly, I want to talk about the typo argument. This issue has been to the court twice already. This court, I think correctly, has declined to take the bait to read the clear implication of both the Maine Yankee and the Northern States Power decision. Counsel was counsel of record in the NSP case, and knows that the government only relied on the avoidable delays clause in both Maine Yankee and Northern States Power. That's what the court talked about in Maine Yankee when it said the government relies on the unavoidable delays clause. Regrettably, in the companion case of Northern States, it erroneously referred to the avoidable delays clause. That was a typo. Candidly, it was something that the government didn't notice. But had we thought that the plaintiffs would, in these cases, would try to drive a truck through that typo, I suppose we probably could have moved to correct the issue. To the extent that counsel argues that the D.C. Circuit specifically contemplated that its decision would affect damages, I don't think that's correct. I think the court made very clear, the D.C. Circuit made very clear in the Wisconsin Electric case, that in no way, shape, or form was indicating that it wanted to have an effect on any... Did the Federal Circuit ratify that and apply it to damages? I don't think the Federal Circuit ratified that in as much as it said, we are not in any way getting to the statutory interpretation question that the court in Wisconsin Electric and in the NSP mandamus order, as well as the NSP re-hearing decision got to. It said, we understand that the D.C. Circuit has exclusive jurisdiction with respect to liability, but that this court is the proper forum with respect to issues related to damages. And that's why it said very clearly, we are not... We are giving race judicata effect to the liability determination, but the D.C. Circuit's decision in no way, shape, or form prevented the trial court here, or this court, from evaluating issues related to contract interpretation, because those issues are solely within the province of the Court of Federal Claims and then on appeal to this court. Thank you, Mr. Alvarado. Thank you, Your Honor.